UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

THOMAS ANTOINE

VERSUS

NORRIS BOUTTE, P/K/A TUCKA

CIVIL ACTION

NO. 15-561-JWD-EWD

**RULING ON MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY AND EX PARTE MOTION TO EXTEND DEADLINE TO FILE MOTION FOR DEFAULT JUDGMENT**

Before the court is: (1) a Motion for Leave to Conduct Expedited Discovery (the "Motion for Leave");[1] and (2) an Ex Parte Motion to Extend Deadline to File Motion for Default Judgment (the "Motion to Extend Deadline")[2] filed by Plaintiff, Thomas Antoine ("Plaintiff"). For the reasons set forth herein, the Motion for Leave and the Motion to Extend Deadline are GRANTED.[3]

**I.      Background**

Plaintiff filed a Complaint in this matter on August 26, 2015 against Defendant, Norris Boutte ("Defendant"), alleging violations of the Lanham Act, breach of contract, breach of fiduciary duty, unfair trade practices, fraud, and unjust enrichment.[4] In his Complaint, Plaintiff alleges that he entered into an agreement with Defendant on September 13, 2009 (the "2009 Agreement") "to manage Defendant as a musical performer in the entertainment industry and produce Defendant's recorded music, and publish, market, and distribute Defendant's singles and albums through compact disc ("CD") sales or on-line digital sales."[5] Plaintiff alleges that under

---

[1] R. Doc. 16.

[2] R. Doc. 17.

[3] Because this Motion for Leave is not excepted within 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this court rules on the Motion for Leave. *See*, *Wilson v. Samson Contour Energy E&P, LLC*, 2014 WL 2949457, at * 1, n. 1 (W.D. La. June 30, 2014) (Magistrate Judge's ruling on Motion for Authority to Seek Discovery Prior to Rule 26(f) Conference).

[4] R. Doc. 1.

[5] R. Doc. 1, ¶¶ 8-9.

1

the 2009 Agreement, he is entitled to receive thirty percent (30%) of the net profits from Defendant's shows, concerts, and appearances and fifty percent (50%) of the net profits from sales of CD's or singles.[6]

Plaintiff alleges, *inter alia*, that he produced Defendant's first two albums, "Love Rehab" and "Forever King" (the "Albums");[7] arranged and paid for both Albums to be manufactured and produced; marketed and promoted the Albums and Defendant; and booked Defendant for concerts, shows, and appearances.[8] He further alleges that despite the 2009 Agreement, Defendant and/or his agents have failed to provide Plaintiff with an accounting of net profits received from Defendant's live performances and have failed to pay Plaintiff his percentage share of net profits.[9] Additionally, Plaintiff alleges that Defendant and his agents have sold the Albums and related memorabilia throughout the gulf south and across the United States and have contracted with a Texas distribution company to distribute Defendant's music and albums without Plaintiff's knowledge or approval.[10] Plaintiff alleges that Defendant communicated with music stores across Louisiana and Texas and notified them that Defendant or his Texas distributor (rather than Plaintiff) would "provide all of Defendant's albums and memorabilia to them and all revenue generated from their sales shall be paid to Defendant or the Dallas, TX distributor."[11] Additionally, Plaintiff alleges that Defendant, without Plaintiff's knowledge or approval, released three new

---

[6] R. Doc. 1, ¶ 11.

[7] In a later filing, Plaintiff explains that he "provided production services and labor under the Agreement with Defendant to produce songs for albums (the "Master Recordings")…." R. Doc. 14, p. 1. As the court understands Plaintiff's filings, the Master Recordings were originally embodied in the Albums and later used by Defendant in subsequent albums. *See*, R. Doc. 1, ¶ 48 ("The songs released on the 'Tucka Love Rehab/Forever King Greatest Hits' album are a collection of songs from the master recordings of Defendant's first two albums….").

[8] *See*, R. Doc. 1, ¶¶ 14-23.

[9] R. Doc. 1, ¶¶ 30-32.

[10] R. Doc. 1, ¶¶ 37-40.

[11] R. Doc. 1, ¶ 41.

albums that are "in direct competition" with the Albums and which, in part, include songs from the Master Recordings of the first two Albums, and that Defendant failed to credit Plaintiff "as a producer in order to retain all revenues and royalties earned…."[12]

Summons was issued to Defendant and on December 30, 2015, Defendant was personally served.[13]  On January 21, 2016, Plaintiff filed a Motion for Clerk's Entry of Default,[14] which was granted, and the clerk issued an Entry of Default on January 22, 2016.[15]  No further action occurred in this matter until August 9, 2016, when the court issued an Order to Show Cause why this case should not be dismissed for failure to prosecute in accordance with Local Civil Rule 41(b)(1)(C).[16]  Plaintiff timely submitted a Response to Order to Show Cause.[17]  Therein, Plaintiff explained that although he was "anxious to move the Court for a default judgment," "Defendant's failure to appear in this matter has deprived Plaintiff of the ability to issue discovery to Defendant in order to obtain information relating to damages suffered by Plaintiff" and that he "has been working diligently to obtain information from third parties in an effort to prove quantum of damages in a motion for default judgment."[18]  Specifically, Plaintiff asserted that he had contacted certain on-line distributors and retailers (the "On-Line Distributors and Retailers") who had purportedly sold or distributed albums embodying the Master Recordings as well as venues (the "Venues") at which Defendant has performed live.  Per Plaintiff's Response to Order to Show Cause, most of the On-Line Distributors and Retailers and some of the Venues were cooperating with Plaintiff to provide

---

[12] *See*, R. Doc. 1, ¶¶ 44-50.

[13] R. Doc. 10.

[14] R. Doc. 11.

[15] R. Doc. 12.

[16] R. Doc. 13.

[17] R. Doc. 14.

[18] R. Doc. 15, p. 3.

the information requested.[19] On August 24, 2016, in light of Plaintiff's Response to Order to Show Cause, this court granted Plaintiff an additional sixty (60) days to file a motion for default judgment.[20]

On September 19, 2016, Plaintiff filed the instant Motion for Leave. Therein, Plaintiff again asserts that "Defendant's failure to appear in this matter has deprived Plaintiff of the ability to issue discovery to Defendant in order to obtain information relating to damages suffered by Plaintiff."[21] Plaintiff therefore seeks leave of court to conduct discovery on certain retailers which "produce, distribute, and sell CDs and albums embodying the Master Recordings (collectively, the 'Retailers')," venues where Defendant has performed live over the last several months, and "third-party music promoters who have hired or retained Defendant to perform live at different venues."[22] Plaintiff alleges that good cause exists to allow this third party discovery and asserts that "[w]ithout obtaining information from Retailers, venues, and music promoters, Plaintiff cannot demonstrate to the Court the amount of damages that Plaintiff has suffered."[23] On October 14, 2016, Plaintiff filed the Motion to Extend Deadline, asking this court to extend the deadline to file his motion for default judgment for sixty (60) days until December 22, 2016 in order to allow time for his requested discovery.[24]

## II. Law and Analysis

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except…when

---

[19] R. Doc. 14, p. 4.

[20] R. Doc. 15.

[21] R. Doc. 16-1, p. 3.

[22] R. Doc. 16-1, pp. 3-4.

[23] R. Doc. 16-1, p. 4.

[24] R. Doc. 17.

4

authorized by…court order." Although the Fifth Circuit has not explicitly adopted a standard to determine whether a party is entitled to expedited discovery, "several district courts within the Fifth Circuit have used the 'good cause' standard when addressing the issue." *ELargo Holdings, LLC v. Doe 209.33.29.66*, 2016 WL 1762037, at * 1 (W.D. La. April 28, 2016). *See also*, *Wilson v. Samson Contour Energy E&P, LLC*, 2014 WL 2949457, at * 2 (W.D. La. June 30, 2014) (same; collecting cases); *BKGTH Productions, LLC v. Does 1-20*, 2013 WL 5507297, at * 4 (E.D. La. Sept. 30, 2013) (same). "The good cause analysis considers factors such as the 'breadth of the discovery requests, the purpose for requesting expedited discovery, the burden on [the responding party] to comply with the requests and how far in advance of the typical discovery process the request was made." *BKGTH Productions, LLC v. Does 1-20*, 2013 WL 5507297, at * 4 (E.D. La. Sept. 30, 2013). In such analysis, the court "must examine the discovery request 'on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.'" *Id*. (citing *St. Louis Group, Inc. v. Metals and Additives Corp., Inc. et al.*, 275 F.R.D. 236, 239-240 (S.D. Tex. 2011)). *See also*, *ELargo Holdings, LLC v. Doe 209.33.29.66*, 2016 WL 1762037, at * 1 (W.D. La. April 28, 2016) ("Courts utilizing the standard 'examine the discovery request on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.' [G]ood cause typically exists where 'the need for expedited discovery outweighs the prejudice to the responding party.'") (internal citations omitted). "The burden of showing good cause is on the party seeking the expedited discovery." *St. Louis Group, Inc. v. Metals and Additives Corp., Inc. et al.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011). "Moreover, the subject matter related to the requests for expedited discovery should be narrowly tailored in scope." *Id*.

Under the good cause analysis, "some courts have allowed limited, expedited discovery when failing to do so would have substantially impacted the case from progressing on the court's docket." *St. Louis Group, Inc. v. Metals and Additives Corp., Inc. et al.*, 275 F.R.D. 236, 241 (S.D. Tex. 2011).  For example, in *Sheridan v. Oak Street Mortgage, LLC*, 244 F.R.D. 520 (E.D. Wis. 2007), plaintiff brought a putative class action against Oak Street Mortgage ("Oak Street") alleging a violation of the Fair Credit Reporting Act.  Oak Street failed to appear in the action and the clerk entered default against it.  The court then granted plaintiff leave to conduct discovery directed at Oak Street and noted that "absent limited discovery to obtain information relevant to the issues of class certification and damages, [plaintiff] cannot pursue his claims in this action."  *Id*. at 522.  Reasoning that because Oak Street "has not appeared in this action and is in default, [plaintiff] is effectively precluded from engaging in a Rule 26(f) conference," the court found, considering the entire record and the reasonableness of the request in light of surrounding circumstances, that plaintiff had established good cause to engage in limited discovery relevant to the issues of class certification and damages.  *Id*.  Similarly, in *Texas Guaranteed Student Loan Corp. v. Dhindsa*, 2010 WL 2353520 (E.D. Cal. June 9, 2010), the court granted plaintiff leave to proceed with limited discovery directed to defendant following entry of default in order to prove plaintiff's damages.  There, plaintiff claimed that it was a guaranty agency operating pursuant to the regulations of the Federal Family Education Loan Program and that it was attempting to collect on a student loan debt of Joel O'Leary that was in default.  After completing the required administrative steps, plaintiff sued O'Leary's employer, alleging that defendant employer was required to withhold fifteen percent (15%) of O'Leary's disposable pay.  However, defendant employer failed to respond to the complaint and plaintiff requested entry of a default against him.  In granting plaintiff's motion to permit limited discovery, the court reasoned that "[l]ike *Sheridan*,

6

Plaintiff asserts that [defendant] holds the information necessary to liquidate its claim, and obtain entry of judgment.  Plaintiff asserts that [defendant], as O'Leary's employer, is the only person who has the wage information required to calculate Plaintiff's damages.  Because [defendant] has defaulted in this case, Plaintiff has been precluded from engaging in a Rule 26(f) conference and initiating discovery." *Id*. at * 3.  Accordingly, based on the record and the circumstances of the case, the court found that plaintiff had established good cause and granted plaintiff's request to serve a request for production of documents on defendant related to "wage information and wages paid by [defendant] to [O'Leary]." *Id*.[25]

Plaintiff asserts that he "has been working diligently to obtain information from third parties in an effort to prove a quantum of damages in a motion for default judgment."[26]  Plaintiff asserts that certain retailers – Amazon.com; CD Baby Distributors, Inc.; Disc Makers, Inc.; Tunecore, Inc.; Music Access, Inc.; and Apple, Inc. (the "Retailers") – have produced, distributed, and sold CDs and albums embodying the Master Recordings and that "information held by Retailers could be used by Plaintiff to show a calculation of damages based on revenues received by Defendant for sales of CDs and albums containing the Master Recordings."[27]  Similarly,

---

[25] The court recognizes that both *Sheridan* and *Dhindsa* granted leave to seek expedited discovery from the defendant rather than a third party.  However, in both cases, plaintiffs represented that the defaulted defendant was the only person or entity with the information necessary to prove damages.  *Texas Guaranteed Student Loan Corp. v. Dhindsa*, 2010 WL 2353520, at * 3 (E.D. Cal. June 9, 2010) ("Plaintiff asserts that [defendant], as O'Leary's employer, is the only person who has the wage information required to calculate Plaintiff's damages."); *Sheridan v. Oak Street Mortgage, LLC*, 244 F.R.D. 520, 521 (E.D. Wis. 2007) ("Sheridan asserts that Oak Street is in the exclusive possession of essential information required to determine the composition of the class and the amount of damages to be awarded.").  Good cause has been found to allow expedited third party discovery where it is the third party who has the necessary information.  *See*, *e.g.*, *ELargo Holdings, LLC v. Doe 209.33.29.66*, 2016 WL 1762037 (E.D. La. April 28, 2016) (allowing plaintiff to issue a subpoena to Doe defendant's internet service provider for the limited purpose of identifying the unknown alleged infringer).  Here, Plaintiff contends that third parties have possession of information necessary to calculate his alleged damages.  Moreover, Plaintiff has described the difficulty involved in serving Defendant, and Defendant (especially in light of his failure to respond to this suit) does not appear to be at all likely to participate in discovery.  Under these circumstances, the court finds it reasonable that Plaintiff would seek discovery from third parties rather than Defendant.

[26] R. Doc. 16-1, p. 3.

[27] R. Doc. 16-1, p. 3.

although Plaintiff does not identify specific venues or music promoters, he asserts that certain venues and music promoters have information regarding proceeds received by Defendant for his live performances and that information from these third parties could be used to show the court a calculation of damages.[28] Plaintiff specifically seeks leave to obtain the following: (1) "[a]ll documents, communications, and correspondence which refer or relate to any agreements between Defendant, his affiliates, and Retailers, venues, and music promoters relating to the sale or performance of the Master Recordings;" and (2) "[a]ll documents, communications, and correspondence which relate to or reflect any and all income and royalty payments paid to Defendant or his affiliate by Retailers, venues, and music promoters relating to the sale or performance of the Master Recordings."[29]

Plaintiff asserts that good cause exists to allow limited expedited discovery based primarily on Defendant's failure to respond to the Complaint, Plaintiff's need to file a motion for default judgment, and Plaintiff's purported inability to demonstrate his damages.[30] Plaintiff contends that "Defendant's failure to appear in this matter has deprived Plaintiff of the ability to issue discovery to Defendant in order to obtain information relating to damages suffered by Plaintiff."[31] Like *Sheridan* and *Dhindsa*, Defendant here has failed to appear and Plaintiff has been precluded from engaging in a Rule 26(f) conference and initiating discovery. Further, the court finds that Plaintiff's proposed discovery is narrowly tailored to the issue of damages. In light of this court's order requiring Plaintiff to file a motion for default judgment expeditiously, as well as Plaintiff's

---

[28] R. Doc. 16-1, p. 4. With regard to third-party music promoters, Plaintiff indicates that he wishes to issue discovery and depose these individuals. R. Doc. 16-1, p. 4 ("If Plaintiff was able to issue discovery to these individuals and depose these individuals, then, Plaintiff could chose the court a calculation of damages suffered as a result of Defendant's failure to pay Plaintiff his share of proceeds.")

[29] R. Doc. 16-1, p. 7.

[30] R. Doc. 16-1, p. 6.

[31] R. Doc. 16-1, p. 3.

need to prove its damages, this court finds that good cause exists to allow Plaintiff to proceed with limited early discovery.

Because this court grants Plaintiff's Motion for Leave, it also finds there is good cause to extend the time within which Plaintiff must file his Motion for Default Judgment.

### III.     Conclusion

As set forth herein, the court finds Plaintiff has established good cause to conduct limited expedited discovery.  Accordingly, the court **GRANTS** Plaintiff's Motion for Leave to Conduct Expedited Discovery.[32]

**IT IS FURTHER ORDERED** that Plaintiff's Ex Parte Motion to Extend Deadline to File Motion for Default Judgment is GRANTED.[33]  Plaintiff's deadline to file his motion for default judgment is hereby extended for sixty (60) days until December 22, 2016.  Failure to comply with the provisions of this Ruling may result in dismissal of this action.

Signed in Baton Rouge, Louisiana, on October 20, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[32] R. Doc. 16.

[33] R. Doc. 17.