UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

THOMAS ANTOINE

VERSUS

NORRIS BOUTTE, P/K/A TUCKA

CIVIL ACTION

NO. 15-561-JWD-EWD

## **RULING**

Before the court is a Motion to Strike Defendant's Answer (the "Motion to Strike")[1] filed by Plaintiff, Thomas Antoine ("Plaintiff"), and a Motion to Set Aside Clerk's Entry of Default Judgment/Motion in Opposition for Motion of Default Judgment (the "Motion to Set Aside") filed by Defendant, Norris Boutte ("Defendant").[2] Defendant has filed an Opposition to the Motion to Strike,[3] and Plaintiff has filed a Reply.[4] Plaintiff has filed an Opposition to the Motion to Set Aside.[5]

For the reasons set forth herein, the Motion to Set Aside is GRANTED and the Motion to Strike is DENIED.[6]

---

[1] R. Doc. 21. On the same day Plaintiff filed his Motion to Strike, he also filed a Motion for Default Judgment seeking default judgment in his favor on his breach of contract claim and "a monetary judgment of three hundred seventy-nine thousand five hundred twenty dollars ($379,520.00)." R. Doc. 22.

[2] R. Doc. 24.

[3] R. Doc. 28.

[4] R. Doc. 36.

[5] R. Doc. 33.

[6] Because the court grants the Motion to Set Aside and denies the Motion to Strike, and because these motions are not excepted pursuant to 28 U.S.C. § 636(b)(1)(A), the undersigned considers the motions to be nondispositive and therefore enters this Ruling. *Compare*, *Hamden v. Tiger Brothers Food Mart, Inc.*, Civil Action 15-412, United States District Court, Middle District of Louisiana, R. Doc. 16 (December 3, 2016 Report and Recommendation), n. 1 ("Because granting the plaintiff's Motion to Strike Answer would effectively be dispositive of the defenses asserted in the Defendant's Answer and Defenses…a report and recommendation is required.").

1

## I. Background

Plaintiff filed a Complaint in this matter on August 26, 2015 against Defendant alleging violations of the Lanham Act, breach of contract, breach of fiduciary duty, unfair trade practices, fraud, and unjust enrichment.[7] In his Complaint, Plaintiff alleges that he entered into an agreement with Defendant on September 13, 2009 (the "2009 Agreement") "to manage Defendant as a musical performer in the entertainment industry and produce Defendant's recorded music, and publish, market, and distribute Defendant's singles and albums through compact disc ("CD") sales or on-line digital sales."[8] Plaintiff asserts that under the 2009 Agreement, he is entitled to receive thirty percent (30%) of the net profits from Defendant's shows, concerts, and appearances and fifty percent (50%) of the net profits from sales of CD's or singles.[9]

Plaintiff alleges, *inter alia*, that he produced Defendant's first two albums, "Love Rehab" and "Forever King" (the "Albums");[10] arranged and paid for both Albums to be manufactured and produced; marketed and promoted the Albums and Defendant; and booked Defendant for concerts, shows, and appearances.[11] He further alleges that despite the 2009 Agreement, Defendant and/or his agents have failed to provide Plaintiff with an accounting of net profits received from Defendant's live performances and have failed to pay Plaintiff his percentage share of net profits.[12]

---

[7] R. Doc. 1.

[8] R. Doc. 1, ¶¶ 8-9.

[9] R. Doc. 1, ¶ 11.

[10] In a later filing, Plaintiff explains that he "provided production services and labor under the Agreement with Defendant to produce songs for albums (the "Master Recordings")…." R. Doc. 14, p. 1. As the court understands Plaintiff's filings, the Master Recordings were originally embodied in the Albums and later used by Defendant in subsequent albums. *See*, R. Doc. 1, ¶ 48 ("The songs released on the 'Tucka Love Rehab/Forever King Greatest Hits' album are a collection of songs from the master recordings of Defendant's first two albums….").

[11] *See*, R. Doc. 1, ¶¶ 14-23.

[12] R. Doc. 1, ¶¶ 30-32. Additionally, Plaintiff alleges that Defendant and his agents have sold the Albums and related memorabilia throughout the gulf south and across the United States and have contracted with a Texas distribution company to distribute Defendant's music and albums without Plaintiff's knowledge or approval. R. Doc. 1, ¶¶ 37-40. Plaintiff alleges that Defendant communicated with music stores across Louisiana and Texas and notified them that Defendant or his Texas distributor (rather than Plaintiff) would "provide all of Defendant's albums and memorabilia

Summons was issued to Defendant on August 27, 2015.[13] On January 8, 2016, a Return of Service was filed into the record showing that Defendant was personally served by Levert Kemp ("Kemp"), a private process server, on December 30, 2015 at Bella Noche, 8190 Plank Road, Baton Rouge, Louisiana 70811 at 11:07 p.m.[14] On January 21, 2016, Plaintiff filed a Motion for Clerk's Entry of Default,[15] which was granted, and the clerk issued an Entry of Default on January 22, 2016.[16] No further action occurred in this matter until August 9, 2016, when an Order to Show Cause was issued as to why this case should not be dismissed for failure to prosecute in accordance with Local Civil Rule 41(b)(1)(C).[17] Plaintiff timely submitted a Response to Order to Show Cause.[18] Therein, Plaintiff explained that although he was "anxious to move the Court for a default judgment," "Defendant's failure to appear in this matter has deprived Plaintiff of the ability to issue discovery to Defendant in order to obtain information relating to damages suffered by Plaintiff" and that he "has been working diligently to obtain information from third parties in an effort to prove quantum of damages in a motion for default judgment."[19] On October 20, 2016,

---

to them and all revenue generated from their sales shall be paid to Defendant or the Dallas, TX distributor." R. Doc. 1, ¶ 41. Additionally, Plaintiff alleges that Defendant, without Plaintiff's knowledge or approval, released three new albums that are "in direct competition" with the Albums and which, in part, include songs from the Master Recordings of the first two Albums, and that Defendant failed to credit Plaintiff "as a producer in order to retain all revenues and royalties earned…." *See*, R. Doc. 1, ¶¶ 44-50.

[13] R. Doc. 4.

[14] R. Doc. 10.

[15] R. Doc. 11.

[16] R. Doc. 12.

[17] R. Doc. 13.

[18] R. Doc. 14.

[19] R. Doc. 15, p. 3.

the undersigned allowed Plaintiff to proceed with limited expedited discovery for the purpose of obtaining information from third parties to support Plaintiff's damages.[20]

On December 1, 2016, Defendant filed an Answer, wherein he denied each allegation set forth in Plaintiff's Complaint[21] and set forth the following "affirmative defenses/exceptions:" (1) "[n]o legal or valid cause of action….;" (2) insufficiency of service of process; (3) improper venue; (4) "[v]iolations of Federal Labor Laws;" and (5) "[l]ack of Verification of Complaint."[22] On December 15, 2016, Plaintiff filed the instant Motion to Strike Defendant's Answer and, as noted above, a Motion for Default Judgment.[23] Thereafter, on December 27, 2016, Defendant filed the Motion to Set Aside (which is also styled as Defendant's opposition to the Motion for Default Judgment).[24] Both the Motion to Set Aside and Defendant's opposition to the Motion to Strike focus on Defendant's assertion that, despite the Return of Service filed into the record, Defendant was never served with process in this matter.

## II. Law and Analysis

### a. Motion to Set Aside

Pursuant to Fed. R. Civ. P. 55(c), "[t]he court may set aside an entry of default for good cause…." "The decision to set aside a default decree lies within the sound discretion of the district court." *United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir. 1985). However, the Fifth Circuit has noted that default judgments are "'generally disfavored in the law' and thus

---

[20] R. Doc. 18. In Plaintiff's December 15, 2016 Memorandum in Support of his Motion for Default Judgment, Plaintiff asserted that "[h]aving completed the limited discovery, Mr. Antoine has obtained information to provide the Court with a reasonable calculation of damages." R. Doc. 22-1, p. 3.

[21] In response to the majority of Plaintiff's numbered paragraphs set forth in the Complaint, Defendant denied the allegations set forth therein for "lack of sufficient information to justify a belief therein." R. Doc. 19.

[22] R. Doc. 19, p. 11.

[23] R. Docs. 21 & 22.

[24] R. Doc. 24. The Motion to Strike and the Motion to Set Aside have been referred to the undersigned. The Motion for Default Judgment has not been referred and remains pending before the District Judge.

4

'should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement.'" *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (quoting *Mason & Hanger-Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984)). Moreover, the law of this Circuit is clear that "modern federal procedure favors trials on the merits." *One Parcel of Real Property*, 763 F.2d at 183. *See also*, *Lacy*, 227 F.3d at 292 ("Thus, 'where there are no intervening equities any doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits.'") (quoting *Gen. Tele. Corp. v. Gen. Tele. Answering Service*, 277 F.2d 919, 921 (5th Cir. 1960)); *Matter of Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992) ("At the outset it is important, however, to recall that courts 'universally favor trial on the merits' and that the decision to set aside a default is committed to the sound discretion of the trial court, a discretion that obviously is not unlimited.") (internal citations omitted); *Marshall v. Louisiana*, 2015 WL 5599037, at * 1 (E.D. La. Sept. 22, 2015) ("Defaults are extreme sanctions reserved for rare occasions, and doubts as to whether or not a defendant has shown good cause should be resolved in favor of setting aside the default."); *Lizotte v. Cain*, 2016 WL 3077809, at * 2 (M.D. La. April 27, 2016) ("Default judgments are not favored in the law, and a trial on the merits is generally seen to be more in the interest of justice and fair play.").

In determining whether good cause exists to set aside entry of a default judgment, the court generally considers three factors: "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Lacy*, 227 F.2d at 292. *See also*, *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (same); *McLean v. Big Dog Group LLC*, 2016 WL 1465378, at * 1 (M.D. La. April 14, 2016) (same). However, "[a] finding of willful default ends the inquiry, for 'when the court finds an intentional

5

failure of responsive pleadings there need be no other finding.'" *Lacy*, 227 F.2d at 292 (citing *Dierschke*, 975 F.2d at 183-184).

### i. Whether the Default Was Willful

"The 'willfulness' inquiry focuses on the neglect or culpable conduct of the defaulted party." *Economy Stone Midstream Fuel, LLC v. Thompson*, 2009 WL 4728695, at * 2 (N.D. Miss. Dec. 3, 2009) (citing *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992)). "A willful default is an 'intentional failure' to respond to litigation." *In re OCA, Inc.*, 551 F.3d 359, 370 n. 32 (5th Cir. 2008) (quoting *Lacy*, 227 F.3d at 292)). Here, the parties' arguments regarding whether Defendant's default was willful focus on whether Defendant was served with and had notice of the Complaint.

In support of his Motion to Set Aside, Defendant has submitted a sworn affidavit wherein he asserts that he was not properly served in accordance with either Louisiana or federal law.[25] Defendant states that he "did not personally receive service of process by Process Server, Levert J. Kemp on December 30, 2015 at Bella Noche Performance Venue…" and contends that, to his knowledge and belief, "no member of my party whether it be band members, volunteers, assistants, or family members has ever been given notice of this pending litigation. Once I became aware of the complaint, I immediately and voluntarily retained counsel and began a defense to the complaint."[26] In further support of his position that he was not served, Defendant submits the affidavit of Clifton Williams, who asserts that he "volunteers and assists [Defendant] with day to day functions" and "was present with [Defendant] continuously without interruption December

---

[25] R. Doc. 24, Exhibit I, ¶ 1 ("He was not properly served in accordance pursuant to Louisiana law."); ¶ 2 ("Plaintiff did not sufficiently serve him with service of process in accordance with the Federal Rules of Civil Procedure."); ¶ 3 ("No personal service of process was effective on Norris Boutte by Plaintiff.").

[26] R. Doc. 24, Exhibit I, ¶¶ 5 & 6. Defendant asserts that he retained his current counsel in the "latter part of November 2016." R. Doc. 24, Exhibit I, ¶ 4.

6

30, 2015 to include his appearance at Bella Noche….”[27] Per his affidavit, Mr. Williams states that "[f]rom the time of arrival at the venue until their departure, [Defendant] did not receive any legal summons or paperwork of any type delivered to him either in person or through an unauthorized representative by any party."[28] Accordingly, Defendant asserts that he "never received notice, thus his failure to appear could not be deemed willful, he was not aware that a complaint had been filed against him and he needed to appear."[29] Defendant further asserts that "once apprised of [Plaintiff's] allegations [he] immediately addressed the complaint and appeared before this Honorable Court."[30]

In contrast to Defendant's assertion that he was not served and did not receive notice of the Complaint until the latter part of 2016, Plaintiff contends that service on Defendant was proper and that Defendant has willfully defaulted.[31] Plaintiff argues that the January 8, 2016 Return of

---

[27] R. Doc. 24, Exhibit II, ¶¶ 1 & 3. Plaintiff attaches Mr. Williams' deposition transcript and argues that "Mr. Williams' credibility is damaged by his own deposition testimony." R. Doc. 33, p. 7. Specifically, Plaintiff contends that Mr. Williams' statement that he was with Defendant "continuously without interruption" is "absurd" and that Mr. Williams stated numerous times in his deposition that he "has a poor memory and cannot remember things in the recent past." R. Doc. 33, p. 7. The undersigned agrees that Mr. Williams stated in his deposition that he did not remember details regarding Defendant's particular performances. However, the undersigned does not necessarily equate Mr. Williams' inability to remember "payments received from venues, size of venues, and other questions regarding Defendant's performances" with his ability to remember the details regarding alleged service of process on Defendant, an event that would seem, at least in the undersigned's estimation, more memorable than the amount Defendant was paid for a particular performance or the size of a particular venue. *See*, R. Doc. 36, p. 4.

[28] R. Doc. 24, Exhibit II, ¶ 4. *See also*, R. Doc. 24, Exhibit II, ¶ 6 ("I remained at Mr. Boutte's side without interruption on December 30, 2015 and he was not presented or given notice of any pending legal action.").

[29] R. Doc. 24, p. 7. *See also*, R. Doc. 28, p. 2 ("defendant's failure to appear until December 1, 2016, was based solely on the fact that personal service was never effectuated....Although plaintiff has provided a proof of service attested to by Levert J. Kemp, Process Server, Mr. Boutte and others remain resolute in their statements that he was never provided notice.").

[30] R. Doc. 24, p. 8.

[31] Plaintiff also asserts that his counsel emailed Defendant's counsel with a courtesy copy of the Complaint on September 4, 2015 and requested Defendant waive service. R. Doc. 33-1. Although it appears that this email was sent to Defendant's current counsel, Defendant has averred that he did not retain his current counsel until November 2016 and Plaintiff's counsel notes in the September 4, 2015 email that "[w]e understand that you may or may not represent Mr. Boutte in this matter." R. Doc. 24, Exhibit I, ¶ 4. *See also*, R. Doc. 28, pp. 1-2 ("Attorney Kenya Rounds, who was not retained and not counsel of record in this matter was phoned and emailed on or about September 4, 2015, by an Attorney Kent Barnett inquiring as to whether or not Attorney Kenya Rounds was currently representing Mr. Norris Boutte at that time. Attorney Kenya Rounds advised Attorney Kent Barnett that he was not representing Mr. Norris Boutte currently, his previous representation had completed and Mr. Norris Boutte [sic] whereabouts were

7

Service signed by Mr. Kemp and filed into the record[32] is prima facie evidence of service and that additional affidavits executed by Mr. Kemp and Lee Brady describe the service on Defendant in greater detail.[33] Per his affidavit, Mr. Kemp explains that he is a contract process server for Capital Process Service, that he was provided with the Summons and Complaint in this matter, and that service was requested on Defendant at the Belle Noche Club.[34] Mr. Kemp explains that "[s]ervice of process by Capital Process Service is normally conducted by one individual, however, because of the nature and location of the Belle Noche Club, Capital Process Service provided another individual, Lee Brady, to accompany me on this service."[35] Mr. Kemp asserts that "[o]n Thursday, December 30, 2015 at 11:07 pm, I, accompanied by Lee Brady, served the Summons and Complaint personally on defendant…at Bella Noche Club…."[36] Mr. Kemp additionally explains that "[a]t the time of service, I was escorted by the club manager, along with Lee Brady, to the rear of the Bella Noche Club where Mr. Boutte was located. He identified Mr. Boutte and I handed the Summons and Complaint personally to Mr. Boutte."[37] Similarly, Mr. Brady attests that he accompanied Mr. Kemp to Bella Noche, that he and Mr. Kemp were escorted by the club manager to the rear of Bella Noche, and that "Mr. Kemp handed the Summons and Complaint personally to Mr. Norris Boutte."[38]

---

unknown."). The undersigned finds that the sending of a courtesy copy of the Complaint to Mr. Rounds, who at the time apparently did not represent Defendant, does not support a finding that Defendant was aware of this suit on September 4, 2015.

[32] R. Doc. 10.

[33] R. Doc. 33, p. 5.

[34] R. Doc. 33-2, ¶¶ 1 & 2.

[35] R. Doc. 33-2, ¶ 4.

[36] R. Doc. 33-2, ¶ 5. The court notes that December 30, 2015 was a Wednesday.

[37] R. Doc. 33-2, ¶ 8.

[38] R. Doc. 33-3, ¶¶ 3 & 4.

8

This court has explained that "'[u]ntil the plaintiff serves the defendant, the defendant has no duty to answer the complaint and the plaintiff cannot obtain a default judgment.'" *Lizotte v. Cain*, 2016 WL 3077809, at * 2 (M.D. La. April 27, 2016) (citing *Rogers v. Hartford Life and Acc. Ins. Co.*, 167 F.3d 933, 937 (5th Cir. 1999)). *See also*, *Marshall*, 2015 WL 5599037, at * 2 ("Service of process must be effective under the Federal Rules of Civil Procedure before a default judgment may be entered against a defendant."). "When service of process is challenged, the serving party bears the burden of establishing its validity." *People's United Equipment Finance Corp. v. Hartmann*, 447 Fed. Appx. 522, 524 (5th Cir. 2011) (unpublished) (citing *Aetna Business Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir.1981)). "The general rule is that '[a] signed return of service constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence.'" *Id*. (citing *O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7th Cir.1993)). *See also*, *Veliz v. Rimax Contractors, Inc.*, 2016 WL 1704496, at * 1 (E.D. La. April 28, 2016) (same).

In *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114 (5th Cir. 2008), the Fifth Circuit considered whether the district court's entry of a default judgment was void under Fed. R. Civ. P. 60(b)(4) because defendant was allegedly not served with a summons as required by Rule 4.[39] In support of its position that defendant was properly served, plaintiff submitted a copy of a signed return of service form and two affidavits from the process server averring that the process server served defendant with the summons personally at a shopping mall on November 16, 2006. *Id*. at

---

[39] Fed. R. Civ. P. 60(b)(4) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:...(4) the judgment is void." The undersigned notes that the *Jenkens* court was faced with the question of whether to set aside a default judgment entered by the court. Here, the court is presented with a slightly different question – whether to set aside the clerk's entry of default. The "Fifth Circuit has stated that a motion to set aside the entry of default 'is more readily granted than a motion to set aside a default judgment.'" *Marshall*, 2015 WL 5599037, at * 1 (quoting *In re OCA, Inc.*, 551 F.3d at 370 (recognizing that courts apply "'essentially the same standard to motions to set aside a default and a judgment by default.' Yet, we have also stated that 'the former is more readily granted than a motion to set aside a default judgment.'") (internal citations omitted)).

9

119. In opposition, defendant submitted an affidavit admitting that she was served with a bundle of what appeared to be legal papers while shopping at the mall, but that she did not review the papers served on her and instead took the papers to her attorney's office, who was out of the country until November 28. *Id*. Defendant's attorney averred in turn that he reviewed the papers dropped off by defendant when he returned twelve days later and that at that time, there was no summons amongst the papers he reviewed. *Id*. The court found that such record could not support a finding that defendant had not been properly served, explaining that "[t]he only evidence that could support [defendant's] position is the averment by her attorney that, 12 days after service, the summons was not in the pack of papers in his office. The statement of her attorney regarding the content of the pack of papers on November 28 does not rebut the process server's affidavit, and it does not create a material issue of fact as to whether [defendant] was served with a summons on November 16." *Id*.

Here, the court is presented with dueling affidavits that specifically attest to the events on December 30, 2015. In contrast to the facts set forth in *Jenkens*, the court cannot say that Defendant's and Mr. Williams' affidavits fail to create a material issue of fact as to whether Defendant was served. Further, in light of Defendant's averment that once he became aware of the Complaint, he "immediately and voluntarily retained counsel and began a defense to the complaint" and Defendant's December 1, 2016 Answer (which, according to Defendant, was filed within a month of his retaining counsel),[40] the record presented is not sufficient to establish that Defendant's default was willful. *See also*, *Marshall*, 2015 WL 5599037, at * 3 ("Without clear

---

[40] *See*, R. Doc. 24, Exhibit I, ¶ 4 ("I did not retain the legal services of my attorney…until the latter part of November 2016.").

10

evidence that the Defendants' failure to timely answer was willful, the Court must consider other factors.").

### ii. Whether Setting Aside the Entry of Default Would Prejudice Plaintiff

"There is no prejudice to the plaintiff where 'the setting aside of the default has done no harm to plaintiff except to require it to prove its case.'" *Lacy*, 227 F.2d at 292 (citing *Gen. Tele.*, 277 F.2d at 921). The Fifth Circuit has explained that "mere delay does not alone constitute prejudice. Rather, 'the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.'" *Id.* (citing *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)). Here, Plaintiff contends that setting aside the clerk's entry of default would prejudice him and explains that "[a]s a result of Defendant's willful delay, Plaintiff was forced to accrue significant expenses in attorney's fees and cost to seek information from third parties through subpoenas; a current sum topping thirty-six thousand dollars ($36,000)."[41]

As explained above, the scope of Plaintiff's third party discovery efforts were limited *via* this court's October 20, 2016 order allowing limited expedited discovery Plaintiff deemed necessary to prove his damages.[42] Further, Plaintiff contends in his December 15, 2016

---

[41] R. Doc. 33, p. 9. *See also*, R. Doc. 33, p. 3 ("Plaintiff has issued thirty-four (34) third-party subpoenas and was required to depose Clifton Williams, Defendant's manager and booking agent. In all, Defendant's bad faith refusal to participate has resulted in attorneys' fees and costs exceeding thirty-six thousand dollars ($36,000)."). Despite this assertion, the court is unsure of total amount of fees and costs associated with Plaintiff's third party discovery efforts. In Plaintiff's briefing submitted in conjunction with the Motion to Strike, Plaintiff asserts that "through November, 2016, Mr. Antoine's counsel have issued twenty-four (24) third-party subpoenas, taken one (1) third-party witness deposition, logged one hundred ninety-two (192) hours, and have accrued forty thousand twenty-seven dollars ($40,027.00) in attorney's fees." R. Doc. 21-1, p. 2. Setting aside any uncertainty regarding the amount of fees and costs, Plaintiff also requests, in a footnote, that "[i]f the Court grants Defendant's motion to set aside the Clerk's entry of default, then, Plaintiff requests Defendant to be ordered to pay Plaintiff's attorneys' fees and costs." R. Doc. 33, p. 9 n. 9. Plaintiff provides no support for his position that fees and costs are available in this instance and, especially in light of the court's conclusion regarding the lack of willfulness in Defendant's default, the court declines to consider such an award.

[42] *See*, R. Doc. 18.

Memorandum in Support of his Motion for Default Judgment, that "[h]aving completed the limited discovery, Mr. Antoine has obtained information to provide the Court with a reasonable calculation of damages."[43] In light of the Fifth Circuit's guidance that requiring a party prove his case cannot constitute prejudice for the purpose of a Fed. R. Civ. P. 55(c) analysis, the undersigned cannot base a finding of prejudice on Plaintiff's discovery efforts.[44]

### iii. Whether Defendant has Presented a Meritorious Defense

"Even in the absence of willful neglect by the defendant or unfair prejudice to the plaintiff, a district court may have the discretion not to upset a default judgment if the defendant fails to present a meritorious defense sufficient to support a finding on the merits for the defaulting party." *Lacy*, 227 F.3d at 293. The Fifth Circuit has explained that "[i]n determining whether a meritorious defense exists, '[t]he underlying concern is ... whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" *In re OCA*, 551 F.3d 359, 373 (5th Cir. 2008) (quoting *Jenkens & Gilchrist v. Groia & Co.*, 524 F.3d 114, 119-120 (5th Cir. 2008)). Here, Defendant has filed an answer wherein he denies Plaintiff's allegations and sets forth numerous affirmative defenses. Although not extremely specific, the undersigned finds, especially in light of the Fifth Circuit's preference for trial on the merits, that Defendant's Answer provides a basis for finding Defendant has presented a meritorious defense. *See*, *Marshall*, 2015 WL 5599037, at * 4 ("likelihood of success is not the measure of whether a meritorious defense is presented. Rather, 'Defendants' allegations are meritorious if they contain 'even a hint of a suggestion' which, proven at trial, would constitute a complete defense. In fact, even 'broad

---

[43] R. Doc. 22-1, p. 3.

[44] In addition to the cost of this third party discovery, Plaintiff notes that "[d]iscoverable information and evidence has likely been permanently lost and witnesses have likely forgotten many details as a result of Defendant's long purposeful delay." R. Doc. 33, p. 9 n. 9. Plaintiff provides no additional explanation for this assertion, and he does not set forth what information and evidence has "likely" been lost and forgotten. The undersigned finds that this footnote, without more, is insufficient to support a finding that Plaintiff has been prejudiced.

and conclusory' allegations meet the meritorious defense criterion for setting aside an entry of default.'") (internal citations omitted).

This court has recognized "that doubtful cases should, whenever possible…be resolved by a trial on the merits…." *Greenleaf Compaction, Inc. v. Able Waste, LLC*, 2011 WL 903776, at * 2 (M.D. La. March 15, 2011). As set forth above, the undersigned finds that there is good cause for this court to exercise its discretion to set aside the clerk's entry of default. Accordingly, for the reasons set forth above, the court GRANTS Defendant's Motion to Set Aside.

### b. Motion to Strike

Plaintiff argues that Defendant's Answer should be stricken because it was filed outside the time period set forth in Fed. R. Civ. P. 12 and without leave of court.[45] In opposition to the Motion to Strike, Defendant contends, as he does in support of the Motion to Set Aside, that he was never served with process and that "since receiving notice from third parties, Mr. Boutte has voluntarily answered the complaint in this matter and fully intends to defend against it."[46] In light of the undersigned's ruling granting the Motion to Set Aside, the undersigned finds that striking Defendant's Answer only to require that same answer to be refiled would be inefficient and a waste of resources. *See*, *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996) (vacating district court's grant of summary judgment based on due process concerns stemming from failure to serve defendant following defendant's appearance and returning case to its procedural posture prior to the granting of summary judgment, such that an entry of default had been entered against defendant and a motion for summary judgment filed but not yet served on defendant, and explaining that because defendant "has defaulted, he must succeed in setting aside the default

---

[45] R. Doc. 21-1, p. 2.

[46] R. Doc. 28, pp. 2 & 3. *See also*, R. Doc. 28, p. 3 ("Without being lawfully subjected to the jurisdiction of this Court, how could a defendant possibly be required to file for leave of Court before legal notice of complaint?").

before he will be permitted to respond to the motion for summary judgment."). For the same reasons the court sets aside the clerk's entry of default, the court DENIES Plaintiff's Motion to Strike. *See also*, *Conn v. U.S.*, 823 F.Supp.2d 441, 443-444 (S.D. Miss. 2011) (explaining that plaintiff's motion to strike defendant's Answer as untimely "carries a tone that demands the Court's caution because 'even a properly made motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted.'") (internal citation omitted).

### III. Conclusion

For the reasons set forth herein, the court **GRANTS** the Motion to Set Aside Clerk's Entry of Default Judgment/Motion in Opposition for Motion of Default Judgment.[47] The court **DENIES** the Motion to Strike Defendant's Answer.[48]

Signed in Baton Rouge, Louisiana, on May 12, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[47] R. Doc. 24. Although not referred, the undersigned notes that the rulings set forth herein appear to moot Plaintiff's pending Motion for Default Judgment (R. Doc. 22).

[48] R. Doc. 21.